07CV6791
JUDGE NORGLE
MAGISTRATE JUDGE SCHENKIER

Clarence Hankton
Reg. No. 13365-424
FCI Pekin
P.O. Box 5000
Pekin, IL 61555-5000

Appearing pro se

**FILED**
DEC 03 2007
12-3-2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

CLARENCE HANKTON,            )
                             )
     Petitioner,             )
                             )
vs.                          )    Criminal No. 1 CR 01
                             )
UNITED STATES OF AMERICA,    )
                             )
     Respondent.             )

### AFFIDAVIT OF CLARENCE HANKTON

Clarence Hankton, hereby affirms under penalty of perjury and pursuant to 28 U.S.C. §1746 that the foregoing is true and correct based upon my knowledge and belief:

1. I was arrested on federal narcotics charges in the matter of <u>United States of America v. Clarence Hankton et al.</u>, on January 03, 2001 and have remained in custody ever since. Shortly after my arrest in this matter, I retained the services of Nathan Diamond Faulk to represent me in this matter as well as a seperate racketeering indictment against me in the United States District Court for the Northern District of Illinois. <u>See</u> <u>United States of America v. Clarence Hankton</u>, No. 99-CR-272. Mr. Diamond Faulk ultimately

represented me throughout the pretrial, guilty plea proceedings and sentencing process.

2.   In approximately August of 2001, I agreed to attend a meeting scheduled by the United States Attorney's Office at the Dirksen Federal Building in Chicago, Illinois. Officials from that office had contacted my attorney on several occassions requesting a meeting and wished to commence plea negotiations.

Present at this meeting was Assistant United States Attorney ("AUSA") Lawrence Beaumont, AUSA Diane MacArthur, Special Agent Jay Darin and Detective Kenneth Charles. My attorney, Nathan Diamond Faulk was also present. To begin the meeting, AUSA Beaumont gave a brief synopsis of the government's evidence against me, informed me of the statutory penalties associated with the crimes alleged in the indictment and discussed the applicability of the United States Sentencing Guidelines to my case. I was informed by AUSA Beaumont that, unless I agreed to enter into a plea agreement with the government, I would receive a sentence between 30 years to life imprisonment. AUSA MacArthur followed by giving a similar explanation of the government's racketeering case against me and explaining that a conviction in that case would net me a life sentence unless I negotiated a plea offer.

3. Immediately following the positions of both AUSA Beaumont and AUSA MacArthur, Detective Kenneth Charles addressed me and admitted to me that law enforcement knew that I did not order the violation order on Annette Williams. Charles explained that he knew who was responsible for ordering the violation and that they needed me to go to the grand jury and cooperate with the government.

At this point in the negotiations I requested to speak privately with my attorney. In response to my request, Mr. Diamond-Faulk asked everyone to leave the room and I requested that the meeting be terminated.

4. Immediately before sentencing on May 6, 2003, I had a meeting with Mr. Diamond-Faulk in a holding cell outside of the courtroom. During this meeting, Mr. Diamond-Faulk discussed with me what was going to take place at the sentencing hearing. He informed me that both drug quanity and my alleged leadership role would be argued and that Jamah Olden would be testifying for the government. This is the first occassion that Mr. Diamond-Faulk discussed these issues with me.

I specifically instructed Mr. Daimond-Faulk to ask Jamah Olden several questions relating to the issues which would be debated at sentencing. First, I directed Mr. Diamond-Faulk to ask Olden whether the drug transactions in my case were part of a specified activity

directed or controlled by the MC nation. Second, whether any proceeds of these sales went to the MC nation or furthered any MC activity. Lastly, I directed Mr. Diamond-Faulk to ask Olden whether I ordered him to sell drugs, decided who he sold the drugs to or determined what location he should sell in. Mr. Diamond-Faulk agreed to ask these questions and remarked specifically about asking Detective Charles about his admissions previously at the Dirksen Federal Building: that law enforcement knew that I wasn't responsible for ordering the beating of Annette Williams. However, Mr. Diamond-Faulk neglected to cross examine Detective Charles redarding our meeting at the Dirksen Federal Building and additionally neglected to ask Jamah Olden a number of questions relating to my alleged leadership which were previously agreed upon.

5. Prior to my guilty plea in my federal narcotics case, Mr. Diamond-Faulk approached me on several occassions and informed me that the United States Attorney's Office wanted to speak with me again after our previous August 2001 meeting. In November of 2002, I finally agreed and I attended a meeting with AUSA Beaumont. At the beginning of this meeting, AUSA Beaumont wanted to talk to me about whether I was going to trial or pleading guilty. Beaumont explained that my codefendant Timeka Murdock refused to plead guilty

unless I agreed to plead guilty. This factor, Beaumont explained, was forcing the government to begin preparation for trial.

Beaumont explained that the plea the government was offering was better than receiving a life sentence and discussed the applicability of the sentencing guidelines in my case. Although Beaumont claimed that the government would seek an enhancement against me based upon my alleged leadership in the offense, he explained that I would more than likely receive only a two-level increase. Based upon what I believed to be agreeable terms and a favorable explanation as to how the guidelines would affect my sentencing, I agreed to plead guilty. The explanation I received from Beaumont was far more in depth than the discription I received from my own lawyer. Following my guilty plea in this case, both Gregory Davis and Timeka Murdock also pled guilty, sparing the government of the burden of proceeding to trial and wasting government resources.

6. At the conclusion of my conviction and sentencing in this matter, I was dissatisfied with the representation Mr. Diamond-Faulk provided and asked that he withdraw as counsel of record for purposes of appeal and filed a complaint against him with the appropriate state bar association. As a result, appellate counsel, Erika Cunliffe was appointed.

Attorney Cunliffe filed my initial brief to the United States Court of Appeals on July 30, 2004. Due to the fall of the mandatory nature of the guidelines during the pendency of my appeal, the Seventh Circuit ultimately remanded my case back to the district court pursuant to the procedures outlined in <u>United States v. Paladino</u>, 401 F.3d 471 (7th Cir.2005), on December 29, 2005. While on remand, my appellate attorney raised additional arguments regarding the reasonableness of my sentence:(1) that the disparity between crack and powder cocaine was a valid basis for departing from the determined guidelines range and (2) the court should conduct a full resentencing to allow me to present evidence in light of the court's new found discretion to consider all of the sentencing factors set forth at 18 U.S.C. § 3553(a). The district court disagreed with counsel's basis for departure and refused to impose a lesser sentence.

At this point, I believed that my appellate attorney intended to appeal these issues back to the United States Court of Appeals for the Seventh Circuit. I had discussed several cases which I had read with attorney Cunliffe regarding certain decisions where courts had applied a 20 to 1 (rather than a 100 to 1) ratio for offenses involving cocaine base; both during the <u>Paladino</u> remand and afterwards.

However, I learned after reading the Seventh Circuit's September 7, 2006 decision that attorney Cunliffe had neglected to file a brief at the court's request. See United States v. Hankton, et al., Nos. 03-2345 & 03-2915, 2006 U.S.App. LEXIS 22740 (September 7, 2006, 7th Cir.)  If my appellate attorney would have asked me whether I wanted to submit a brief arguing the reasonableness of my 300 month prison sentence I would have said yes. If I would have known that my attorney had an opportunity to file a brief arguing the reasonableness of my sentence and yet decided not to do so (for whatever reason) I would have either done so myself or asked for the appointment of other counsel to do so in my stead. But for attorney Cunliffe's failure to file a brief, I would have done so myself.

7. I am willing to testify to the matters contained herein if called on to do so.

Dated: November 6, 2007

                                Respectfully,

                                Clarence Hankton
                                Reg. No. 13365-424
                                FCI Pekin
                                P.O. Box 5000
                                Pekin, IL 61555-5000

                                Appearing pro se