MHN

07CV6791
JUDGE NORGLE
MAGISTRATE JUDGE SCHENKIER

Clarence Hankton
Reg. No. 13365-424
FCI Pekin
P.O. Box 5000
Pekin, IL 61555-5000

FILED

DEC 03 2007
12-3-2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Appearing pro se

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

CLARENCE HANKTON, )
 )
    Petitioner, )
 )
 )
vs. ) Criminal No. 1 CR 1
 )
 )
UNITED STATES OF AMERICA, )
 )
    Respondent. )

**MEMORANDUM, WITH EXHIBITS, IN SUPPORT OF
28 U.S.C. §2255 MOTION**

    Clarence Hankton (hereafter Hankton), is serving a term of 300 months imprisonment. Within the fabric of his antecedent §2255 motion and this memorandum (accompanied by Hankton's affidavit) he seeks relief predicated, <u>inter alia</u>, on the constitutional embodiments relating to effective assistance of trial and appellate counsel. In the ensemble, Hankton contends that his trial and appellate lawyers failed to meet their collective constitutional obligations.

I.

## Factual Matrix

On January 2, 2001, the United States filed a criminal complaint in the Northern District of Illinois charging Hankton and various other individuals with conspiring to possess with the intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. §§ 846 and 841(a)(1). On May 15, 2002, Hankton and others were charged in a nine-count superceding indictment, with the following crimes: conspiracy to possess with the intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2; knowingly and intentionally distributing and possessing with the intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1); and using a communication facility, namely a telephone, in the commission of a felony, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2.

On November 21, 2002, Hankton signed a plea agreement in which he consented to plead guilty to Counts Two, Three, and Four of the Superceding Indictment. In that plea agreement, Hankton admitted to the allegations set forth in the substantive counts of the indictment which encompased the distribution of approximately 166 grams of cocaine base to a confidential informant. Hankton's plea agreement contained provisions which permitted the parties to contest the drug amounts attributable for sentencing purposes

and Hankton's alleged leadership role in the offense.

At Hankton's sentencing hearing, the government presented evidence concerning Hankton's role as a leader of the Mickey Cobras ("MC's") street gang. Based upon evidence collected from cooperating witnesses and law enforcement, the government claimed that Hankton ordered the fatal beating of fellow MC Annette Williams in retaliation for Williams having stolen $3,000 from the gang. Other witnesses testified concerning Hankton's alleged role as a "king" within the MC's. At the conclusion of this evidence, the court accorded credibility to the government's allegations and subsequently enhanced Hankton's offense level by four pursuant to U.S.S.G. § 3B1.1(a). The court also determined that, despite the scope of Hankton's plea agreement —— where he only admitted to distributing approximately 166 grams —— the drug amounts relating to the conspiracy counts in the indictment would be attributed to Hankton as well. This development resulted in an additional two level increase to Hankton's offense level under U.S.S.G. § 2D1.1, totaling approximately 1.5 kilograms —— nearly three times the amount Hankton pleaded guilty to.

Subtracting three points for acceptance of responsibility, the court determined that Hankton's offense level was 37, with a criminal history of III. The court's calculation corresponded to a guideline sentencing range of 262 to 327 months imprisonment.

3

The resulting sentence was three hundred (300) months imprisonment, at the middle of the determined range.

On appeal Hankton challenged the reliability of the evidence presented by the government at sentencing and argued, inter alia, that he should be resentenced in light of the Supreme Court's recent decision in Blakely v. Washington, 159 L.Ed.2d 403 (2004) and the Seventh Circuit's decision in United States v. Booker, 2004 U.S. App. LEXIS 14223 (7th Cir. July 9, 2004). After disposing of his other arguments, the Seventh Circuit remanded Hankton's case to the district court for a limited remand in light of the procedures described in United States v. Paladino, 401 F.3d 471 (7th Cir.2005). See United States v. Hankton, 432 F.3d 779,797 (7th Cir.2005).

During the remand proceedings Hankton argued that the court should depart from the determined guideline range because Hankton's sentence was unreasonable on several scores. First, counsel argued that the court should grant Hankton a full resentencing to allow him to present evidence concerning his personal history, character and family circumstances and that these factors warranted a lower sentence. Second, Hankton asked the court to depart due to the disparity between crack and powder cocaine. Notwithstanding, the district court refused to reduce Hankton's sentence.

Following the district court's ruling in relation to Hankton's Paladino remand, the Seventh Circuit provided Hankton with an opportunity to tender a brief which argued that Hankton's sentence of 300 months imprisonment was unreasonable. See United States v. Hankton, 2006 U.S.App. LEXIS 22740 ("We invited each of the defendants to file briefs concerning the reasonableness of the sentence, however, only Davis and the government responded") Despite the invitation, Hankton's appellate lawyer neglected to file a brief. Id. With no explanation from Hankton's counsel forthcoming as to why he should receive a lower sentence, the Seventh Circuit affirmed Hankton's conviction and sentence.

Hankton then filed a petition for writ of certiorari to the United States Supreme Court on November 13, 2006. See Hankton v. United States, No. 06-7823. Within this petition, Hankton's appellate lawyer neglected to include the argument previously raised at the district court (that the 100:1 ratio created an unreasonable disparity between offenders sentenced for cocaine base and those sentenced for cocaine). Hankton's petition for writ of certiorari was subsequently denied.

This timely motion to vacate sentence pursuant to 28 U.S.C. § 2255 follows.

II.

Arguments and Authorities in Support of § 2255 Relief

A.

Whether Hankton was deprived of [effective] assistance of counsel during critical stages of the direct appellate proceedings?

1. Whether counsel's failure to file an appellate brief following Hankton's <u>Paladino</u> remand rose to the level of <u>per se</u> prejudice and violated his Sixth Amendment right to effective assistance of counsel?

Settled precedent discloses that the Sixth Amendment's right to counsel attaches at the commencement of the adversarial process and extends throughout the appellate proceedings. <u>See</u> <u>Evitts v. Lucey</u>, 469 U.S. 387, 397 (1985). To prevail on a claim of ineffective assistance of counsel, a defendant must ordinarily make two distinct showings. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). First, a habeas petitioner must demonstrate that his attorney's "representation fell below an objective standard of reasonableness" considering the circumstances as they existed at the time of representation." <u>Id.</u> at 687-88. Second, upon an affirmative showing that counsel performed below acceptable standards, a petitioner must demonstrate that he was prejudiced in such a manner that, but for counsel's errors, there exists a reasonable probability

6

that the outcome of the proceeding would have been different. Id.

However, the Supreme Court has identified certain circumstances where prejudice will be presumed and counsel's failures will automatically rise to the level of error. See United States v. Cronic, 466 U.S. 648 (1984). One such area of representation concerns counsel's inability to perfect an appeal. Roe v. Flores-Ortega, 528 U.S. 470 (2000). The Court held that when counsel frustrates a criminal defendant's statutory right to appellate review, counsel's performance is automatically ineffective. Id.

In the case at bar, Hankton obviously desired to appeal the imposition of his 300 month sentence and had everything to gain and nothing to lose by appealing. Immediately following his sentence, Hankton was dissatisfied with the representation trial counsel provided and ultimately obtained seperate appellate counsel for purposes of appeal. See Hankton Affidavit. Once Hankton obtained the services of Erika Cunliffe for purposes of appeal, counsel filed his direct appellate brief and due to the Supreme Court's decisions concerning the United States Sentencing Guidelines, Hankton's sentence was remanded to the district court in light of the Seventh Circuit's decision in United States v. Paladino, 401 F.3d 471 (7th Cir.2005). Here the district court would determine whether, in light of the sentencing factors set forth in 18 U.S.C. § 3553(a),

it would chose to impose the same sentence now that the guidelines were advisory rather than mandatory. See Hankton, 432 F.3d at 797.

With the fall of the mandatory guidelines, Hankton's appellate lawyer was presented a window of opportunity to argue that he should receive a lower sentence. Taking advantage of the opportunity presented, counsel identified several viable basis for departure which were not previously available under the regime of the then mandatory guidelines. First was the new founded opportunity to argue that the 100 to 1 ratio between crack and powder cocaine created an unreasonable disparity. At the time of sentencing, several district courts determined that such a disparity warranted a reduction in a defendant's term of imprisonment. See e.g., United States v. Smith, 359 F.Supp.2d 771 (E.D. Wis.2005). Second was the fact that the district court was previously unable to give cosideration to Hankton's personal character, cotrition, motivation and family circumstances. Hankton argued that these factors warranted a reudced sentence. However, the district court disagreed and explained that it would impose the same sentence even though the guidelines were now only advisory.

Following the district court's decision, the Seventh Circuit asked that both Hankton and his codefendant submit a brief concerning the reasonableness of their sentences in light of the

recent developments in the law. However, Hankton's appellate lawyer altogether failed to tender a brief at the request of the court of appeals and neglected to advocate his cause. See Hankton, 2006 U.S.App. LEXIS 22740 ("We invited each of the defendants to file briefs concerning the reasonableness of the sentence, however, only Davis and the government responded") As a result, Hankton, the individual with the greatest sentence in the indictment, was deprived of the assistance of counsel during the aforementioned appellate proceedings.

The law on the subject is clear that when counsel's constitutionally deficient performance deprives a defendant of an appeal that he would have otherwise taken, the defendant has made out a successful showing of ineffective assistance of counsel. Flores-Ortega, 528 U.S. at 484. The circumstances of this case require the presumption of prejudice described in Flores-Ortega and a finding that Hankton's appellate lawyer provided ineffective assistance of counsel for failing to submit a brief at the request of the court of appeals or file an Anders brief detailing counsel's assessment that any potential issue would not be meritorious. See e.g., Betts v. Litscher, 241 F.3d 594, 596 (7th Cir.2001). Counsel may not be the final judge of frivolousness. Id. at 597.

According to the dictates of <u>Flores-Ortega</u>, counsel's representation on appeal involves a consultation with his client about the advantages and disadvantages of appealing and making a reasonable effort to determine his or her client's wishes. <u>Id.</u> at 528 U.S. 487. This is so because the "fundamental decision to appeal rests with the defendant." <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983). Despite the constitutional requirements imposed on counsel, no consultation was conducted and no <u>Anders</u> brief was ever filed which would have placed Hankton on notice of his attorney's decision not to file an appellate brief. Such a consultation would have enabled Hankton to either submit a pro se brief arguing the reasonableness of his sentence or obtain seperate counsel to conduct such a task in his stead. <u>See</u> Hankton Affidavit.

Instead, Hankton learned of his attorney's failure to file a brief after receiving a copy of the Seventh Circuit's opinion denying relief. <u>Id.</u> Such an omission resulted in the denial of counsel at a critical stage of the proceedings and constitutes a violation of Hankton's Sixth Amendment right to counsel. <u>See</u> e.g., <u>Bell v. Lockhart</u>, 795 F.2d 655, 675 (8th Cir. 1986)("When a criminal defendant fails to obtain fair appellate review of his conviction he is deprived of his constitutional right of appellate review of his conviction") 1/

---

1/ Hankton's codefendant (Gregory Davis) argued the crack/powder disparity issue on appeal and ultimately to the U.S. Supreme Court. <u>See Davis v. United States</u>, No. 06-9210. Currently, Davis' petition is pending before the Court awaiting the decision in <u>Kimbrough v. United States</u>, No. 06-6330 (a case dealing with the crack powder disparity). Obviously, counsel's omission of this issue was prejudicial.

In sum, Hankton contends that attorney Cunliffe's neglect in submitting a brief following the district court's <u>Paladino</u> remand warrants a presumption of prejudice and constitutes a constructive denial of counsel. Additionally, it is Hankton's contention that counsel's specific failure to brief both the crack/powder disparity issue and argue for full resentencing to allow Hankton to present evidence relating to the factors delineated at 18 U.S.C. §3553(a) amounts to ineffective assistance under the alternative two-pronged test set forth in <u>Strickland v. Washington</u>, 446 U.S. 668 (1984). Counsel's forfeiture of these two issues on appeal cannot be characterized as a strategic decision. <u>See</u> e.g., <u>Mason v. Hanks</u>, 97 F.3d 887,893 (7th Cir.1996). Such a decision prevented later consideration of such claims in a later discretionary appeal —— such as Hankton's petition for writ of certiorari —— and clearly amounts to ineffective assistance. <u>See</u> <u>Freeman v. Lane</u>, 962 F.2d 1252,1259 (7th Cir.1992); <u>see</u> <u>also</u> <u>United States ex rel Bernard v. Lane</u>, 819 F.2d 798,805 (7th Cir.1987).

2. **Whether Hankton was deprived of [effective] assistance of counsel as a result of counsel's failure to sufficiently cross examine government witnesses and present exculpatory evidence?**

In order to provide the type of effective representation required by the Sixth Amendment, counsel is required to know the law. In federal cases under the sentencing guidelines, counsel's

knowledge of the law includes a working knowledge of the guidelines and their applicability to a particular criminal defendant. See e.g., Nichols v. United States, 75 F.3d 1137 (7th Cir.1996). Trial counsel's failure to argue an improper increase to a defendant's sentence under the guidelines falls below the requirements of the Sixth Amendment and offends the constitution. And if such an omission results in an unwarranted increase, ineffective assistance of counsel is proven. United States v. Headley, 923 F.2d 1079 (3d. Cir.1991).

At bar, Hankton's trial attorney, Nathan Diamond-Faulk, not only neglected to adequately dispute Hankton's role in the offense, but failed to utilize evidence in his possession which would have defeated the government's tenuous position concerning Hankton's role in the offense. Hankton contends that counsel's representation in this respect fell well below acceptable norms and subsequently led to an unwarranted increase in his sentence. A basic examination of the expanded record — highlighted in detail below — supports such a conclusion.

At a meeting in furtherance of plea negotiations, Hankton met with Assistant United States Attorney ("AUSA") Lawrence Beaumont, AUSA Diane McArthur, Special Agent Jay Darin, Detective Kenneth Charles and attorney Diamond-Faulk at the Dirksen Federal Building

in approximately August of 2001. Hankton's decision to attend this meeting was the result of repeated requests from the United States Attorney's Office to Hankton's counsel.

At the outset of this meeting, AUSA Beaumont gave a brief summary of the government's evidence against Hankton, listed the statutory penalties associated with the offenses charged in the indictment and explained the applicability of the sentencing guidelines. Beaumont explained that if Hankton did not plead guilty, he would receive a sentence between thirty years to life imprisonment. AUSA McArthur gave a similar summary of the evidence the government intended to utilize in a seperate RICO indictment and assured Hankton that a conviction in that case would net him a life sentence. Following these statements by the officials from the United States Attorney's Office, Detective Charles addressed Hankton. 2/

Detective Charles admitted to Hankton that law enforcement was aware that he (Hankton) did not order the fatal beating of MC member Annette Williams. Charles went on to explain that authorities were aware who gave the order, but that they needed Hankton to cooperate and be a witness at grand jury proceedings to

---

2/ The factual basis for the instant claim is set forth in detail via Hankton's attached affidavit.

13

obtain an indictment. Hankton's counsel was present during the entire exchange. Following these remarks by Detective Charles, Hankton confered with counsel and desired to speak with him privately. Immediately following, Hankton's counsel ended the meeting at Hankton's request.

In later stages of the proceedings, Hankton's attorney became aware that the government intended to allege that it was actually Hankton who ordered the violation of Annette Williams. These allegations would serve as the basis for the government's attempt to increase Hankton's sentence for holding a position of authority in the instant offense.

In anticipation of sentencing, Hankton had a personal consultation with his attorney where certain issues relating to his sentence were discussed. At this meeting, attorney Diamond-Faulk explained that the government was certain to argue that Hankton was responsible for the violation of Annette Williams. These allegations, <u>inter alia</u>, would be used to substantiate the government's position with regard to Hankton's role in the offense. Diamond-Faulk then expressed his intention to cross examine Detective Charles in relation to the discussion which had taken place at the Dirksen Federal Building — that law enforcement was aware that Hankton had not given the

violation order. However, when it came time for Hankton's sentencing, counsel neglected to cross examine Detective Charles about his previous admissions relating to the Annette Williams beating.

The law of this circuit is definitive with regard to counsel's obligation to effectively cross examine witnesses in defense of his client. See e.g., United States v. Myers, 892 F.2d 642 (7th Cir.1990); see also Hogan v. McBride, 79 F.3d 578 (7th Cir.1996). In a case such as this one — where a guilty plea is at issue — the effective dispute of aggravating factors at sentencing becomes the most important aspect of counsel's representation. However, counsel in this case failed his client in this respect and allowed the government to present evidence in support of increasing Hankton's sentence when he possessed evidence which would have easily defeated the government's contentions.

As a result, the court determined that Hankton held a position of authority during the conduct at issue and increased his sentence on that basis. In so holding, the court relied heavily on a preponderance determination that Hankton was solely responsible for ordering the violation of Annette Williams. The court's reasoning was clear: if Hankton was capable of ordering the fatal beating of Annette

Williams, the same authority carried over into the allegations of drug trafficking. See Order, dated April 21, 2006, at 10 ("Hankton and Davis attained positions of leadership and power in one of Chicago's largest and most dangerous street gangs ... [and] ordered the vicious beating of another gang member") However, both counsel and the government were aware who actually ordered the violation. More importantly, they were aware that it was not Hankton. Yet counsel neglected to present the very evidence which would have supported Hankton's claims that he was not responsible for the Williams death. In this respect, counsel was clearly ineffective.

3. **Whether counsel's failure to mount a constitutional challenge to the Court's use of the preponderance of evidence standard at sentencing violated Hankton's Fifth and Sixth Amendment rights and amounted to ineffective assistance of counsel?**

It is Hankton's contention that the district court's use of the preponderance of evidence standard to increase his sentence on the basis of drug quantity and his alleged leadership role violates the Sixth and Fifth Amendments to the Constitution. At sentencing, counsel conceded that this lower (and actually civil) standard was the appropriate evidentiary threshold. Such a concession in the context of the legal landscape at the time of Hankton's sentencing

amounts to ineffective assistance of counsel and warrants section 2255 relief.

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court determined that any fact which is essential to a criminal defendant's punishment must be submitted to a jury and proven beyond a reasonable doubt. Cases which followed the Supreme Court's Apprendi ruling began to require a heightened standard of proof in certain circumstances rather than the tradional use of the preponderance of evidence standard. See e.g., United States v. Jordan, 256 F.3d 922, 929 (9th Cir.2001).

In this case, the court questioned counsel as to the appropriate burden of proof for certain aggravating factors the government intended to utilize to increase Hankton's sentence. See Transcript (5/6/03), at 172. It was the government's contention that the preponderance of evidence standard was appropriate and counsel readily agreed. Id. In this sense, counsel's failure to advocate his client's cause and object to the burden of proof the government would have to carry amounted to ineffective assistance. This is so due to the disproportionate impact that these findings would have on the severity of Hankton's sentence.

At the conclusion of arguments by both parties, the court held Hankton responsible for approximately 1.5 kilograms of cocaine base (nearly ten times the amount he pled guilty to) and increased his guideline range by four levels based upon the court's determination that Hankton exercised a leadership role during the course of the offense. Id. at 192-200. However, the court acknowledged that the government had not proven these facts beyond a reasonable doubt, or even by clear and convincing evidence. Hankton contends that such findings violated both his Fifth and Sixth Amendment rights and counsel's failure to challenge the same constitutes ineffective assistance of counsel. See Nichols, 6th Cir., No. 05-6452. These enhancements led to a substantial increase in the amount of incarceration Hankton received at sentencing and clearly warrants § 2255 relief.

### III.

### The Need for an Evidentiary Hearing

Hankton asserts that the allegations set forth herein clearly warrant an evidentiary hearing and collateral relief. Before the court is able to dispose of Hankton's § 2255 claims, the allegations in this petition require that a hearing be conducted where the legitimacy of certain factual averments which are central to this

court's collateral inquiry will be tested for credibility.

IV.

## Conclusion

WHEREFORE, Hankton respectfully prays that this Honorable Court schedule an evidentiary hearing and grant any and all appropriate relief consistent with the herein complained of constititonal violations.

Dated:   November 7, 2007

                                      Respectfully submitted,

                                      */s/ Clarence Hankton*
                                      Clarence Hankton
                                      Reg. No. 13365-424
                                      FCI Pekin
                                      P.O. Box 5000
                                      Pekin, IL 61555-5000

                                      Appearing pro se