IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CLARENCE HANKTON,          )
                           )
         Petitioner,       )          No.  07 C 6791
                           )               01 CR 01
                           )
                           )          Honorable Charles R. Norgle
                           )
UNITED STATES OF AMERICA,  )
                           )
         Respondent.       )

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is Petitioner Clarence Hankton's ("Hankton") Motion to Vacate,
Set Aside, or Correct Sentence, brought pursuant to 28 U.S.C. § 2255. Hankton
challenges his sentence for distribution of approximately 156 grams of crack cocaine, in
violation of 21 U.S.C. § 841(a)(1). For the following reasons, the motion is denied.

## I. BACKGROUND

### A. Facts[1]

During the late 1980s and 1990s, Hankton was a prominent member of the
"Mickey Cobras" ("MCs"), a "dangerous and violent street gang" that operated primarily
on the north-west side of Chicago. United States v. Hankton, 432 F.3d 779, 782 (7th Cir.
2005). "The gang's various criminal undertakings were coordinated through a
hierarchical-type infrastructure and included, but were not limited to, the possession and
distribution of powder cocaine and cocaine base (better known as crack.)." Id.

---

[1] The Court takes the following facts from United States v. Hankton, 432 F.3d 779 (7th Cir.
2005), and United States v. Hankton, 463 F.3d 626 (7th Cir. 2006). Other facts are appropriately
cited.

In a superseding indictment dated May 15, 2002, Hankton—along with co-defendant Greg Davis ("Davis") and six other co-conspirators—was charged with conspiracy to possess with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. The indictment also alleged that Hankton participated in other drug related crimes arising out of his leadership of the MCs. See id. at 781.

On November 21, 2002, Hankton signed a plea agreement in which he admitted to distributing approximately 156 grams of cocaine base to a confidential informant. Id. at 782. Hankton's plea agreement also set forth his disagreement as to two enhancements proposed by the government, one concerning the quantity of drugs and another pertaining to Hankton's alleged leadership role in the offense. Id. at 784.

The Court held an extensive sentencing hearing in May of 2003. Among other things, the government presented evidence that Hankton: (i) was a "leader or organizer" within the MCs organization, ascending, by the late 1990s, to the title of "King of Kings"; (ii) ordered the beating that resulted in the death of Annette Williams, a fellow member of the MCs, for allegedly stealing $3,000 from the gang; and (iii) was responsible for distributing more than 500 grams of crack cocaine, as opposed to the 150 grams he admitted to distributing. Id. at 784-86 (providing a detailed description of the evidence presented at Hankton's sentencing).

At the conclusion of the sentencing hearing, the Court found, based on the plea agreements and testimony, that Hankton "could have reasonably foreseen that the amount of [crack cocaine] he was dealing . . . was well in excess of 500 grams, and could reach even beyond 1.5 kilograms." Id. at 787. The Court therefore increased Hankton's offense level by two under U.S.S.G. § 2D1.1. Further, the Court found that Hankton was

an organizer and leader of the MCs and therefore applied a four level leadership enhancement to his sentence pursuant to U.S.S.G. § 3B1.1(a). Id. Subtracting three points for acceptance of responsibility, the Court determined that Hankton's offense level was thirty-seven, with a criminal history category of three. Weighing the totality of the evidence, the Court sentenced Hankton to 300 months of imprisonment, which fell in the middle of the applicable Guidelines range of 262 to 327 months. Id.

The Seventh Circuit affirmed Hankton's sentence but ordered a limited remand to the district court pursuant to United States v. Paladino, 401 F.3d 471 (7th Cir. 2005), to determine whether the district court would have imposed a different sentence had it known that the United States Sentencing Guidelines were merely advisory. Hankton, 432 F.3d at 787. On April 21, 2006, this Court issued a ten-page opinion concluding that it would not have sentenced Hankton differently. See United States v. Hankton, No. 01 CR 1, 2006 WL 4509535 (N.D. Ill. Apr. 21, 2006). One week later, on April 28, 2006, the Seventh Circuit issued an order "inviting the parties to file any arguments concerning the appropriate disposition of the appeal in light of the district court's decision." Govt.'s Mem. Regarding Mar. 27, 2012 Hearing Ex. A; see also United States v. Hankton, 463 F.3d 626, 627 (7th Cir. 2006) ("We invited each of the defendants respectively to file briefs concerning the reasonableness of the sentences."). All responses were due on May 5, 2006, one week after the invitation. Govt.'s Mem. Regarding Mar. 27, 2012 Hearing Ex. A. On May 5, Hankton's appointed appellate counsel, Erika Cunliffe ("Cunliffe"), filed an emergency motion to extend time to file her brief. The Seventh Circuit granted the emergency motion on May 8, ordering that Hankton "may file an argument concerning the appropriate disposition of the appeal in light of the district court's

decision by 5/12/06." Id. Cunliffe did not file a brief by the extended May 12 deadline. On May 24, Cunliffe filed a motion to adopt the position statement of co-defendant Davis, which the Seventh Circuit denied on May 30. Id. As a result, while Davis and the government responded to the Seventh Circuit's invitation to file a brief, Hankton did not.

Both Hankton and Cunliffe have submitted affidavits concerning the failure to accept the Seventh Circuit's invitation to file a brief. In an affidavit filed on December 3, 2007, Hankton states, in relevant part:

> While on [Paladino] remand [in the district court], my appellate attorney raised additional arguments regarding the reasonableness of my sentence: (1) that the disparity between crack and powder cocaine was a valid basis for departing from the determined guidelines range and (2) the court should conduct a full resentencing to allow me to present evidence in light of the court's new found discretion to consider all of the sentencing factors set forth at 18 U.S.C. § 3553(a). The district court disagreed with counsel's basis for departure and refused to impose a lesser sentence.

> At this point, I believed that my appellate attorney intended to appeal these issues back to the . . . Seventh Circuit. I had discussed several cases which I had read with attorney Cunliffe regarding certain decision where courts had applied a 20 to 1 (rather than a 100 to 1) ratio for offenses involving cocaine base; both during the Paladino remand and afterwards.

> However, I learned after reading the Seventh Circuit's September 7, 2006 decision that attorney Cunliffe had neglected to file a brief at the court's request. If my appellate attorney would have asked me whether I wanted to submit a brief arguing the reasonableness of my 300 month prison sentence I would have said yes. If I would have known that my attorney had an opportunity to file a brief arguing the reasonableness of my sentence and yet decided not to do so (for whatever reason) I would have either done so myself or asked for the appointment of other counsel to do so in my stead. But for attorney Cunliffe's failure to file a brief, I would have done so myself.

Aff. of Clarence Hankton 6-7 (internal citation omitted). In an affidavit filed on March 19, 2012, Cunliffe certified, in relevant part:

> 6. Although I received the notice from the Seventh Circuit providing Mr. Hankton an opportunity to file a brief, I had been out of town for a period

of time and did not receive the notice with sufficient time to discuss the matter or file a timely brief.

7. I filed a motion, asking the Seventh Circuit . . . for additional time to file a brief, or alternatively for leave to adopt the brief filed by co-defendant, Gregory Davis. The Seventh Circuit denied my request.

8. I did not seek leave to file a brief instanter with the Seventh Circuit Court of Appeals.

9. I did not advise Mr. Hankton of this development, at the time, nor was he made aware that the Seventh Circuit had sought additional briefing in light of the District Court's ruling.

Aff. of Erika Cunliffe 2.

On September 7, 2006, the Seventh Circuit affirmed the judgment of this Court as to both Davis and Hankton. Upholding Hankton's sentence as reasonable, the Seventh Circuit explained:

Hankton declined our invitation to delineate why the sentence he received was unreasonable when measured against the § 3553(a) factors. Indeed, the trial judge referred to a number of the factors enumerated in § 3553(a) as integral to his decision not to alter Hankton's previously imposed sentence, *i.e.*, even after considering those factors, he stated he would have given Hankton the same sentence had he understood the Guidelines to be advisory.

Thus, since the sentencing judge has advised us that he would have imposed the same sentence post-Booker, and due to the fact that Hankton has failed to rebut the presumption that his sentence is reasonable, he has failed to establish plain error.

Hankton, 463 F.3d at 628 (internal citation omitted).[2]

Both Hankton and Davis filed petitions for writ of certiorari. Hankton filed his petition on November 13, 2006, and it was denied on January 8, 2007. Hankton v. United States, 549 U.S. 1139 (2007). Davis filed his petition approximately three weeks later, on January 31, 2007. On June 11, 2007, the Supreme Court granted certiorari in

---

[2] With respect to Davis, the Seventh Circuit explained: "Unlike Hankton, Davis has responded to our invitation to explain his argument as to why he contends his sentence is unreasonable. In his brief, Davis presents a number of claims, all of which are without merit." Hankton, 463 F.3d at 628.

Kimbrough v. United States, 511 U.S. 1133 (2007), and the case was decided on December 10, 2007, 552 U.S. 85 (2007) (holding that district courts may consider the disparity between the Sentencing Guidelines' treatment of crack cocaine and powder cocaine when fashioning a defendant's sentence). On January 7, 2008, the Supreme Court granted Davis's petition, vacated the judgment against him, and remanded the case to the Seventh Circuit for further consideration in light of Kimbrough. Davis v. United States, 552 U.S. 1090 (2008). The Seventh Circuit subsequently vacated Davis's sentence and remanded the case to the district court for resentencing in light of Kimbrough. United States v. Davis, 330 F. App'x 111, 112 (7th Cir. 2009). The Seventh Circuit explained:

> Davis made the crack/powder disparity argument in the district court. On appeal, we agreed that the district judge was required to abide by the 100-to-1 ratio when applying the Sentencing Guidelines to a defendant's conduct. Kimbrough has changed the landscape and the government now concedes that Davis must be resentenced. We agree that Davis's sentence must be reconsidered.

Id. at 112 (internal citation omitted). On remand, the district court ultimately imposed a 188 month sentence, which was a 22 month reduction from Davis's original sentence. United States v. Davis, No. 01-CR-01 (N.D. Ill. Aug. 20, 2010).

Unlike Davis, Hankton never received a full resentencing. In April 2008, Hankton filed a motion for retroactive application of the Sentencing Guidelines to crack cocaine pursuant to 18 U.S.C. § 3582(c). While Hankton was eligible for the reduction under § 3582(c)(2), the Court declined to reduce his 300 month sentence for distributing between 500 grams and 1.5 kilograms of crack cocaine. See United States v. Hankton, No. 01 CR 1 (N.D. Ill. Sept. 18, 2008). Hankton appealed, arguing that the Court abused its discretion when it declined to consider his "rehabilitative efforts and exemplary prison

behavior." See United States v. Hankton, 324 F. App'x 528, 529 (7th Cir. 2009). Finding no abuse of discretion in the Court's decision not to reduce Hankton's sentence, the Seventh Circuit affirmed the denial of Hankton's § 3582(c) motion. Id.

## B. Procedural History

On December 3, 2007, in the midst of the above motions and appeals, Hankton filed the instant motion pursuant to § 2255, alleging ineffective assistance of counsel at his sentencing hearing and on appeal. The government did not, however, respond to Hankton's motion until July 16, 2010.[3] On July 29, 2011, Hankton filed a supplemental memorandum in support of his § 2255 motion. The supplemental memorandum expands upon Hankton's primary arguments in his initial motion but does not raise new arguments. Rather than respond to the supplemental memorandum, the government stands on its original July 16 response.

On August 12, 2011, Hankton filed a second supplemental memorandum in which he argues, for the first time, that based on Pepper v. United States, 131 S. Ct. 1229 (2011), this Court should have considered his rehabilitation during the Paladino remand. The government responded to this argument on October 21, 2011, and Hankton replied on November 3, 2011.

On January 6, 2012, the Court ordered an evidentiary hearing to determine the merit of Hankton's claim that appellate counsel provided ineffective assistance on his direct appeal following the Paladino remand. The hearing took place on March 27, 2012.

---

[3] The government notes in its response that "there was some miscommunication among counsel for the government regarding responsibility for responding to Hankton's various motions." Govt.'s Resp. to Defs.' Mot. to Vacate 3. While such an extensive delay might ordinarily be prejudicial, the government is correct that, in this case, the petitioner was not and is not prejudiced by the delay because he would continue to serve a significant sentence even if he were to prevail on this motion.

On March 26, 2012, the Government filed a "Memorandum Regarding March 27, 2012 Hearing." The Court provided Hankton an opportunity to respond to the submission, after which the Government replied. At long last, Hankton's § 2255 motion and supplemental pleadings are fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

Section 2255 allows a person convicted of a federal crime to vacate, set aside, or correct his sentence.[4] Relief under § 2255 "is appropriate only for 'an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004) (quoting Borre v. United States, 940 F.2d 215, 217 (7th Cir. 1991)). If the Court determines that any of these grounds exists, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). In determining whether grounds for § 2255 relief exist, the Court reviews the evidence and draws all reasonable inferences from it in a light most favorable to the government. Carnine v. United States, 974 F.2d 924, 928 (7th Cir. 1992); Messinger v. United States, 872 F.2d 217, 219 (7th Cir. 1989); United States v. Cosentino, 869 F.2d 301, 302 (7th Cir. 1989).

---

[4] "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a).

Hankton raises two general grounds for relief under § 2255, including: (1) ineffective assistance of trial and appellate counsel; and (2) error by the district court in declining to consider his post-sentencing rehabilitation during the Paladino remand.

## B. Ineffective Assistance of Counsel

Hankton raises three claims of ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984). First, Hankton alleges that appellate counsel, Cunliffe, rendered ineffective assistance during his direct appellate proceedings when she "neglected to submit a brief subsequent to the district court's determination in relation to his remand pursuant to [Paladino]." Mot. to Vacate Sentence 1. More specifically, Hankton argues that by not filing the brief, Cunliffe failed to preserve issues relating to the crack/powder disparity and reasonableness of his sentence in light of the § 3553(a) factors. Hankton contends that this omission amounts to per se ineffective assistance of counsel such that Hankton need not satisfy Strickland's prejudice prong. Id. at 2. In the alternative, Hankton argues that this omission satisfies both the deficient performance and prejudice prongs of Strickland. Second, Hankton alleges that trial counsel, Nathan Diamond-Faulk ("Diamond-Faulk"), rendered ineffective assistance during sentencing by failing to "present exculpatory evidence" related to his leadership role in the offense, as well as by "neglecting to effectively cross-examine" a government witness in relation to Annette Williams' beating and death. Id. Finally, he alleges that trial counsel rendered ineffective assistance by failing to object to the Court's application of a preponderance of the evidence standard at the sentencing hearing. Id.

"The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding," including critical pretrial stages, trial, sentencing, and the first

appeal of right. Lafler v. Cooper, 132 S. Ct. 1376, 1385 (2012). The Sixth Amendment does not entitle a defendant to the assistance of counsel for a discretionary appeal, including a petition for certiorari. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further.").

To prevail on an ineffective assistance claim, "a petitioner must establish that his 'counsel's performance was deficient' and that 'the deficient performance prejudiced the defense.'" Koons v. United States, 639 F.3d 348, 351 (7th Cir. 2011) (quoting Strickland, 466 U.S. at 687). In reviewing a claim of ineffective assistance, the Court's analysis is "highly deferential" to the attorney, and assumes that the conduct at issue "falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. If the prisoner identifies specific omissions, the Court must determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. While on a traditional Strickland claim the prisoner must identify both deficient performance and prejudice, there are certain circumstances in which the Court must presume the prejudice prong is satisfied. See Strickland, 466 U.S. at 692.

### 1. Per Se Strickland Violation—Appellate Counsel

Hankton first contends that appellate counsel's failure to consult with him regarding the possibility of filing a brief following the Seventh Circuit's invitation, and then her subsequent failure to file such a brief, amounts to per se ineffective assistance of counsel such that Hankton need not prove Strickland's prejudice prong. Hankton's argument is without merit.

"Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." Id.; see also Penson v. Ohio, 488 U.S. 75, 88 (1988) ("[T]he denial of counsel in this case left petitioner completely without representation during the appellate court's actual decisional process . . . the presumption of prejudice must extend as well to the denial of counsel on appeal." (internal citation omitted)). Cases that have found per se prejudice "involve particularly egregious conduct that is the functional equivalent of actual absence of counsel." Hollenback v. United States, 987 F.2d 1272, 1275 (7th Cir. 1993). The Seventh Circuit has held that "the 'prejudice' component of Strickland does not apply when an appellate lawyer fails either to file a brief or to satisfy the requirements of Anders in seeking leave to withdraw." Castellanos v. United States, 26 F.3d 717, 719 (7th Cir. 1994) (citing Penson, 488 U.S. 75); see also Griffin v. United States, 109 F.3d 1217, 1219 (7th Cir. 1997) ("[F]ailure to file an appellate brief . . . [is] presumptively prejudicial." (citing United States ex rel. Thomas v. O'Leary, 856 F.2d 1011, 1015-16 (7th Cir. 1988))).

Cunliffe's failure to accept the Seventh Circuit's one-week invitation to file a second brief on appeal does not amount to an actual or constructive absence of counsel. Not only did Cunliffe appeal Hankton's sentence and file an opening appellate brief, she also filed a memorandum before this Court, on the Paladino remand, arguing that Hankton should have been sentenced differently. It was only after this Court determined otherwise that the Seventh Circuit (having retained jurisdiction over the appeal pursuant to the Paladino procedure), "invited each of the defendants respectively to file briefs concerning the reasonableness of the sentences." Hankton, 463 F.3d at 627. On the day the brief was due, Cunliffe filed a motion for an extension, which was granted. After she

failed to meet the extension deadline, Cunliffe filed a motion to adopt co-defendant Davis's brief instanter, which was denied. On these facts, Cunliffe was involved in Hankton's appeal; while her actions were far from exemplary, her failure to file the invited brief does not rise to the level of "actual or constructive denial of the assistance of counsel altogether." Strickland, 466 U.S. at 692.

Moreover, the brief following the Paladino remand is not the same as a direct appellate brief because it is "invited," and therefore not mandatory. In Stokes v. United States, the petitioner, like Hankton, argued that appellate counsel was ineffective for failing to file a brief before the Seventh Circuit following the district court's decision on a Paladino remand. No. 07 C 0248, 2011 WL 1103861, at * 12 (E.D. Wis. Mar. 23, 2011). The Stokes court explained:

> After this court's findings were forwarded to the Seventh Circuit, that court stated the parties could file "any arguments concerning the appropriate disposition of the appeal in light of the district court's decision." Such arguments were not mandatory; instead the parties were "invite[d]" to submit arguments. Counsel did not file any responsive argument, and the Seventh Circuit then found that Stokes had not rebutted the presumption of reasonableness regarding the mid-range sentence.

Id. (internal citations omitted) (emphasis added). So too here. The failure to file an optional brief on one week's notice is not the same as the failure to file an opening appellate brief which, as set forth above, Cunliffe did in this case. This situation is akin more to a failure to file a reply brief, which does not rise to the level of per se prejudice. See, e.g., United States v. Birtle, 792 F.2d 846, 847-48 (9th Cir. 1986) (finding no per se prejudice when defendant's appellate counsel failed to appear at oral argument or file a reply brief). Cunliffe's failure to file the optional brief does not come close to what is required to establish per se prejudice under Strickland.

Finally, the Court notes that, in Booker's wake, the Seventh Circuit routinely invited briefing on the reasonableness of sentences following Paladino remands. A search through such cases reveals that defendants (as well as the government) frequently did not respond to the Seventh Circuit's invitation for argument, and that their sentences were routinely upheld. See, e.g., United States v. Johnson, 209 F. App'x 586 (7th Cir. 2006); United States v. Santiago-Ochoa, 209 F. App'x 575 (7th Cir. 2006); United States v. Tellez-Boizo, 209 F. App'x. 567 (7th Cir. 2006); United States v. Fernandez-Reyes, 179 F. App'x 397 (7th Cir. 2006); United States v. Carter, 178 F. App'x 572 (7th Cir. 2006); United States v. Ward, 165 F. App'x 477 (7th Cir. 2006). The Court declines to hold that there is a per se ineffective assistance claim in every case—and there were many—in which a party declined to respond to the Seventh Circuit's invitation to file a brief following a Paladino remand.

For the foregoing reasons, Hankton's per se ineffective assistance claim is rejected. The Court proceeds to a traditional Strickland analysis.

### 2. *Traditional Strickland Violation—Appellate Counsel*

To prevail on a traditional Strickland claim, Hankton must prove that his counsel's performance was deficient and that the deficient performance was prejudicial. Hankton must satisfy both prongs of the test in order to meet his burden, and a finding against him on either prong ends the inquiry. Strickland, 466 U.S. at 697. Because the Court finds that Hankton fails to satisfy the prejudice prong, it need not consider deficient performance. Id. ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

"To establish <u>Strickland</u> prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Lafler</u>, 132 S. Ct. at 1384 (quoting <u>Strickland</u>, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

As an initial matter, Hankton cannot establish a reasonable probability that, but for Cunliffe's failure to file the invited brief (and therefore argue the crack/powder disparity issue before the Seventh Circuit), he would have prevailed in his direct appeal. Unlike Hankton, Davis did file a brief regarding the reasonableness of his sentence, which, among other things, directly addressed the crack/power disparity. Applying the prevailing law at the time of the appeal, the Seventh Circuit held:

> In an equally unpersuasive argument, Davis avers that the district court "incorrectly found that it lacked the authority to impose a non-Guidelines sentence on the basis of the disparity between sentences for crack and powder cocaine." . . . [T]o the extent that Davis argues either that the sentencing judge erred in calculating his sentencing range or should have given him a non-Guidelines sentence based on the sentencing disparity between powder and crack cocaine, this argument has been barred by this court's recent decision in *United States v. Miller*, 450 F.3d 270, 274-76 (7th Cir. 2006). . . . Accordingly, Davis's argument must fail. . . .

<u>Hankton</u>, 463 F.3d at 629. Because the Seventh Circuit directly rejected the crack/powder disparity argument, filing the invited brief would not have changed the result of Hankton's direct appeal. Hankton, therefore, cannot show prejudice in the context of his direct appeal.

Recognizing this, Hankton also argues that, in determining prejudice, the Court must consider that Davis's petition for certiorari was granted whereas his was denied. Hankton argues that, by not filing the invited brief, Cunliffe waived the crack/powder

disparity argument for purposes of the certiorari petition. Hankton contends that he can "precisely show" that but for Cunliffe not filing the invited brief, "he would have been successful on a *writ* where his co-defendant Davis filed a brief and preserved all of the matters relating to the crack-cocaine disparity." Petitioner's Resp. to Govt.'s Mem. Regarding Mar. 27, 2012 Hearing 5. Hankton's theory of prejudice is therefore based on the assumption that, because Davis was successful on his certiorari petition, had Cunliffe filed the invited brief and argued the crack/powder disparity, Hankton necessarily would have been successful on his. This argument is without merit as it is entirely speculative.[5]

Assuming, *arguendo*, that the Court should consider the results of proceedings beyond the direct appeal, it is Hankton's burden to establish a reasonable probability that, but for Cunliffe not filing the invited brief, the Supreme Court would have granted his petition for certiorari. Given that Supreme Court review is discretionary and that the Supreme Court did not comment on why it denied certiorari, it is mere speculation to presume that Hankton's petition would have been granted if only Cunliffe had filed the invited brief. See generally Ross v. Moffitt, 417 U.S. 600, 616-17 (1974) ("This Court's

---

[5] In his initial § 2255 memorandum, filed in 2007, Hankton argued that Cunliffe "neglected to include [in the petition for certiorari] the argument previously raised at the district court (that the 100:1 ratio created an unreasonable disparity between offenders sentenced for cocaine base and those sentenced for cocaine)." Mem. in Supp. of 28 U.S.C. § 2255 Mot. 5. In a 2010 filing, titled "Petitioner's Traverse," Hankton comes to the opposite conclusion, explaining that his "attorney <u>did</u> raise the [crack/powder disparity] issue on certiorari." Petitioner's Traverse 4, n.1 (emphasis in original). Neither party has attached Hankton's petition for certiorari to the record. To the extent that Hankton argues that Cunliffe erred in filing the petition, that argument is without merit. Because the right to counsel does not extend to the filing of a writ of certiorari, an alleged error by counsel in the filing of that petition does not raise a constitutional claim and is thus not cognizable under § 2255. See Wyatt v. United States, 574 F.3d 455, 459 (7th Cir. 2009) ("[A] criminal defendant has no constitutional right to counsel to pursue a petition for a writ of certiorari. And where there is no constitutional right to counsel, there cannot be constitutionally ineffective assistance of counsel."). Hankton's current counsel acknowledges so much. See Petitioner's Resp. to Govt.'s Mem. Regarding Mar. 27, 2012 Hearing 4 ("Nothing in Hankton's briefs suggests that he . . . believes his right to counsel through the first appeal extends to his filing of a *writ of certiorari*.").

review . . . is discretionary and depends on numerous factors other than the perceived correctness of the judgment we are asked to review.").

The Court declines Hankton's invitation to speculate as to why the Supreme Court granted certiorari in one case and denied it in another. See, e.g., United States v. Williams, 934 F.2d 847, 852-53 (7th Cir. 1991) (holding "speculation" insufficient to establish prejudice). That Hankton did not obtain the same relief as Davis is not, on its own, enough to establish prejudice. See, e.g., Nichols v. United States, 563 F.3d 240, 252 n.8 (6th Cir. 2009) (en banc) ("Contrary to [appellant]'s arguments, the fact that his codefendant succeeded on a similar claim is not dispositive [of prejudice under Strickland]." (internal quotation marks and citation omitted)); Ajan v. United States, Nos. 2:02-CR-71, 2:06-CV-24, 2009 WL 1421183, at *18 (E.D. Tenn. May 20, 2009) ("Because [petitioner's] only claim of prejudice hangs on his inability to receive the benefit of *Booker* (the benefit that co-defendants . . . *did* receive in the form of a post-*Booker* re-sentencing and a[ ] sentencing reduction), he can likewise establish no prejudice because, even though his co-defendants were successful in achieving a remand of their cases for resentencing after *Booker,* that is not dispositive. . . .") (internal quotation marks and citations omitted)). Hankton has not established—let alone "precisely show[n]"—that his failure to obtain the same relief as Davis can be traced back to Cunliffe's failure to file the invited brief. Petitioner's Resp. to Govt.'s Mem. Regarding Mar. 27, 2012 Hearing 5. Furthermore, there is no reason to presume that the failure to file the invited brief had any effect on the Supreme Court's denial of certiorari since Hankton has not shown that such failure affected the contents or timing of his

petition or was otherwise brought to the attention of the Supreme Court.[6]  Because Hankton has not satisfied his burden to establish prejudice, the Court need not consider whether Cunliffe's performance was constitutionally deficient.

### 3. Failure to "Present Exculpatory Evidence" and "Effectively Cross-Examine" a Witness—Trial Counsel

Hankton argues that his trial counsel, Diamond-Faulk, rendered ineffective assistance during sentencing by failing to adequately dispute his leadership role in the offense.  Specifically, Hankton argues that Diamond-Faulk failed to sufficiently cross-examine a government witness and present exculpatory evidence regarding his role in ordering a "violation" of Annette Williams, who was beaten to death by MC gang members.  Hankton's argument is without merit.

Hankton wrongly assumes that the beating of Annette Williams was the only basis on which the Court found him to hold a leadership role within the MCs.  To the contrary, the Court based its determination of Hankton's leadership role on a wide range of evidence that Hankton does not dispute.  This evidence included, *inter alia*, Hankton's progression from "Don" in 1994 to "King of Kings" in 1999 or 2000, as well as physical evidence uncovered from Hankton's residences, including ammunition, guns, drugs, and "letters calling Hankton the 'King', statues of cobras wearing crowns and jewelry of crowns—all referring to Hankton's leadership position in the gang as the 'King of Kings.'"  Hankton, 432 F.3d at 786.  The Court also relied on FBI joint gang task force Agent Darin's testimony that, as "King of Kings," Hankton, "was responsible for everything from the direction of the conversion of powder cocaine into crack to the organization of the gang's basketball games," id. at 786, and that, "as the 'king,' Hankton

---

[6] This is especially true considering Hankton's contradictory statements as to whether Cunliffe included the crack/powder disparity argument in her petition for certiorari.  See note 5, supra.

was in charge of all the activities undertaken by the MCs on the north-side of the city, including the distribution of illegal narcotics," id. at 795 n.28. Corroborating Agent Darin's testimony was the testimony of Hankton's co-defendant Jammah Olden, also a member of the MCs. Recounting Hankton's leadership role, Olden described "an instance where Hankton had ordered Olden and other members of the MCs not to 'run', but to stand and fight when they became involved in an altercation with members of a rival gang, the Gangster Disciples, over drug peddling territory." Id. at 786. Olden also testified that Hankton personally supplied him with crack and instructed him to sell it to others. Id.

Accordingly, Hankton's role in the beating and death of Annette Williams was but one of many pieces of evidence the Court relied on in finding Hankton's leadership role in the offense. Even if Hankton did not give the order to beat Williams, he would not prevail on this argument. Because no prejudice resulted from Diamond-Faulk's decision not to cross-examine the government witness and/or present exculpatory evidence on this issue, Hankton's argument fails.

### 4. Failure to Object to the Court's Use of a Preponderance of the Evidence Standard at Sentencing—Trial Counsel

Next, Hankton argues that the Court's use of the preponderance of the evidence standard at sentencing was in error and Diamond-Faulk's concession to the Court's application of this standard amounts to ineffective assistance. This argument has been routinely rejected by the Seventh Circuit. See United States v. Artlet, 489 F.3d 813, 821 (7th Cir. 2007) ("Although a defendant has a due process right to be sentenced on the basis of accurate information . . . the evidentiary standards that apply at sentencing are not as stringent as those applicable in a criminal trial. The government is required to

prove the amount of drugs attributable to a defendant by a preponderance of the evidence." (internal quotation marks and citations omitted)); see also United States v. Waltower, 643 F.3d 572, 575 (7th Cir. 2011) ("The Guidelines state that it is 'appropriate' that facts relevant to sentencing be proved by a preponderance of the evidence, and we have held that application of the preponderance standard at sentencing generally satisfies due process." (internal quotation marks and citations omitted)). Accordingly, Hankton's preponderance of the evidence argument is denied. Hankton therefore fails to show that the assistance he received from Diamond-Falk during the course of the sentencing proceeding was constitutionally defective.

## C.  Post-Sentencing Conduct During the Paladino Remand

In addition to his ineffective assistance claims, Hankton argues in his second supplemental § 2255 motion that, pursuant to the Supreme Court's 2011 decision in Pepper, this Court should have considered his post-sentencing conduct during the Paladino remand. Hankton's reliance on Pepper is misplaced.

In Pepper, the Supreme Court held that "when a defendant's sentence has been set aside on appeal and his case remanded for resentencing, a district court may consider evidence of a defendant's rehabilitation since his prior sentencing and that such evidence may, in appropriate cases, support a downward variance from the advisory Guidelines range." Pepper, 131 S. Ct. at 1241.

Here, unlike in Pepper, Hankton's sentence was not "set aside on appeal" and his case was not "remanded for resentencing." The Paladino remand is a "limited remand" in which the district court's scope of review is extremely narrow. See, e.g., Paladino, 401 F.3d at 484; Hankton, 432 F.3d at 797. A Paladino remand is not a "full resentencing,"

United States v. Longoria, 229 F. App'x 408, 410 (7th Cir. 2007), and the Seventh Circuit "retain[s] jurisdiction of the appeal" throughout the limited remand process, Paladino, 401 F.3d at 484. While Hankton is correct that the district court can (and did) consider the 18 U.S.C. § 3553(a) factors during a Paladino remand, "the conduct or circumstances that bear on the § 3553(a) factors must have been in existence at the time the original sentence was imposed." United States v. Re, 419 F.3d 582, 584 (7th Cir. 2005). This is because "[t]he goal of the Paladino remand is to determine if, at the time of sentencing, the district judge would have imposed a different sentence in the absence of mandatory guidelines. Post-sentencing events or conduct simply are not relevant to that inquiry." Id.; see also United States v. Welch, 429 F.3d 702, 705-06 (7th Cir. 2005) ("The district court properly limited its review during Paladino remand to the record at the time of sentencing . . . while Welch's efforts post-sentencing to prepare for life outside prison are commendable, such actions are not appropriate for consideration during a Paladino remand." (internal citations omitted)); United States v. Gordon, 189 F. App'x. 544, 545 (7th Cir. 2006) (holding that, unlike a full remand to the district court for resentencing, the "inquiry on a Paladino limited remand must look to conduct or circumstances in existence at the time the original sentence was imposed"). Pepper, therefore, does not apply to the limited remand under Paladino. See generally United States v. Tapps, 412 F. App'x 878 (7th Cir. 2011) (holding that "Pepper applies to resentencing" and therefore does not apply to a proceeding under 18 U.S.C. § 3582(c)(2) because it is "*not* a form of resentencing"); United States v. James, 438 F. App'x 307, 308 (5th Cir. 2011) (same). Accordingly, Hankton's argument that the Court should have considered his rehabilitation during the Paladino remand is denied.

### III. CONCLUSION

For the foregoing reasons, Hankton's Motion to Vacate, Set Aside, or Correct Sentence, filed pursuant to 28 U.S.C. § 2255, is denied. Hankton's Motion for Judgment on Motion to Vacate Pursuant to 28 U.S.C. § 2255 is denied as moot. Because Hankton has not demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Slack v. McDaniel, 529 U.S. 473, 484 (2000), the Court denies a Certificate of Appealability pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

IT IS SO ORDERED.

ENTER:

_____

CHARLES RONALD NORGLE, Judge
United States District Court

Date: August 8, 2012